## MEMBERS' OPERATING AGREEMENT

AGREEMENT made effective the 12th of April, 2005, by and between DANIEL J. STEBNITZ, DAVID S. STEBNITZ and GARY C. STEBNITZ, each a "Member" and collectively, "the Members."

THE MEMBERS HEREBY AGREE AS FOLLOWS:

1. **FORMATION & NAME.** The Members hereby form a limited liability company, pursuant to the Wisconsin Limited Liability Company Act at Chapter 183 of Wisconsin Statutes, to do business under the name "SPIRIT VALLEY CAMP, LLC," (the "LLC"). A copy of the filed Articles of Organization is attached hereto as Exhibit "A," which is incorporated herein and expressly made a part hereof. Except as expressly provided below, the rights and liabilities of the Members shall be as provided in that Act.

2. **PLACE OF BUSINESS.** The principal place of business shall be Spirit Valley Camp, located in the Town of Tomahawk, Lincoln County, Wisconsin. The legal description of said property is contained on Exhibit "B" attached hereto, incorporated herein and expressly made a part hereof.

3. **REGISTERED AGENT & OFFICE.** The registered office of the LLC shall be 1102 Ann Street, Delavan, Wisconsin 53115, Daniel J. Stebnitz, Acting Registered Agent.

4. **PURPOSE.** The purpose of the LLC is to acquire, hold title to and provide for the usage and succession of certain real property located in the Town of Tomahawk, Lincoln County, Wisconsin (the "Property") more fully described in Exhibit "B" attached hereto, incorporated herein and expressly made a part hereof, and such other property as the LLC shall determine from time to time.

5. **CAPITAL.** The Members have made the following original contributions to the capital of the LLC:

| NAME | AMOUNT (% OF OWNERSHIP) |
|---|---|
| Daniel J. Stebnitz | 33-1/3% of the property described in Exhibit "B" |
| David S. Stebnitz | 33-1/3% of the property described in Exhibit "B" |
| Gary C. Stebnitz | 33-1/3% of the property described in Exhibit "B" |

At no time, however, may the capital account of any single Member exceed 33-1/3% of the total capital accounts of all Members, except upon a unanimous vote of all Members.

6. **MEMBERSHIP GROUP.** It is the intention of the initial Members to provide for the transition to future generations without diluting their respective ownership percentages. Therefore, this Members' Operating Agreement shall be interpreted with this goal in mind.

Each of the initial individual Members shall be considered to be a "Membership Group." There shall only be three Membership Groups admitted to the LLC, except upon a unanimous vote of all Members, pursuant to Paragraph 23.

Each Membership Group may have multiple Members, but each individual Membership Group shall have only one (1) vote in the LLC.

In this Members' Operating Agreement, the terms "Member" and "Membership Group" shall be given the same meaning, as defined under this paragraph. For example, if this Agreement calls for unanimous vote of the Members, that shall be interpreted as needing the vote of all three (3) Membership Groups.

Matters within each individual Membership Group, such as electing a Manager to represent them in the LLC, voting, capital contributions, special assessments, etc. shall be handled independently within each Membership Group and shall not be considered part of the LLC matters. In the event a Membership Group is deadlocked and cannot agree upon a manager, the eldest participating child within that Membership

Group shall be the Manager. It is acknowledged that each Manager acts as a representative of their respective Membership Group. Accordingly, a Manager's vote shall represent the majority of their respective Membership Groups' Members. However, in the event a Membership Group is deadlocked, the Manager shall have the final vote.

All obligations under this Members' Operating Agreement, financial or otherwise, are the joint and several liability of each Member of a Membership Group.

A listing of the individual Membership Groups and their respective Members shall be maintained by the Executive Secretary and incorporated herein as Exhibit "C."

7. **MANAGEMENT OF LLC.** Management of the LLC shall be vested in three (3) Managers. The initials Managers of the LLC are as follows:

Daniel J. Stebnitz

David S. Stebnitz

Gary C. Stebnitz

These managers shall serve until their respective deaths, resignation or inability to act. At all times, there shall be three (3) Managers and each Manager must be a Member of the LLC. Each of the three (3) Membership Groups, as herein defined, shall have a Manager representing their interest in the LLC. Upon a vacancy in the management, the respective Membership Group shall elect a new Manager to fill said vacancy.

The Managers shall elect an Executive Secretary, who shall be responsible for maintaining the official records of the LLC.

8. **MEETINGS.** Regular meetings of the LLC shall be held at least once a year, or more often as determined by the Managers. Notice of the time and place of each regular meeting shall be given in writing by the Executive Secretary to each Member at least two (2) weeks before such meeting. Special meetings may be called by the Executive Secretary on such notice as he may determine. The Members may meet without notice upon the execution of a waiver of notice form signed by all Members.

3

9. **CAPITAL CONTRIBUTIONS.**

   A. **Capital Contributions of Members.** The Members shall contribute the amount of contribution as set forth in Paragraph 5 above, and in such amounts and at such times as further provided for herein.

   B. **Capital Account.** A separate capital account shall be maintained for each Member and shall be credited with the amount of cash or property contributed by him to the LLC. Each Member's capital account shall be increased by his share of LLC profits and decreased by his share of LLC losses and any distributions made to him by the LLC. No Member shall be entitled to withdraw any part of his capital account or to receive any distributions from the LLC, except as provided below.

   C. **Interest.** No Member shall be entitled to any interest on the balance in his capital account.

   D. **Additional Capital Contributions.** The Members have not agreed to make any additional contributions to the LLC unless the Managers unanimously agree, except as provided below.

   E. **Annual Capital Contribution.** Each Membership Group shall be required to make an annual Capital Contribution of the sum of One Thousand and no/100 ($1,000.00). The Managers, by majority vote, may amend this Annual Capital Contribution from time to time. However, any annual increase in the Annual Capital Contribution shall not exceed the sum of Five Hundred and no/100 ($500.00) per Membership Group unless the Managers, by unanimous vote, approve a larger increase.

   F. **Default.** If any Member fails to make any capital contribution required to be made by him when due and the same remains unpaid for four (4) months, said Member shall be considered in default of this Agreement and the provisions of Paragraph 21(B) shall apply.

10. **ORDINARY EXPENSES.** If the cash reserves of the LLC are insufficient to pay the ordinary expenses of maintenance and upkeep, such as insurance, real estate and personal property taxes, ordinary repairs and such, the Managers, by

4

majority vote, can order the Membership Groups to be equally responsible for additional capital contributions to cover said expenses.

11. **SPECIAL ASSESSMENTS.** The Managers, upon a unanimous vote, may levy Special Assessments against the Members.

12 **FISCAL YEAR.** The fiscal year shall be the calendar year.

13. **ALLOCATION OF PROFIT AND LOSS.** Net profits and losses of the LLC shall be determined for each calendar year on the cash basis. Any net profit or loss of the LLC, including any gain or loss from a sale of the Property, and any deductions, credits and allowances not taken into accounting determining such profit, gain or loss, may be allocated equally among the Membership Groups upon the majority vote of the Managers.

14. **BOOKS AND RECORDS.** Proper accounting records of all LLC business shall be kept and shall be open to inspection of any of the Members, or their designee or legal representative, at all reasonable times. The LLC shall maintain its accounting records, and shall report for income tax purposes, on the cash basis of accounting. At the end of each calendar year, a complete accounting of the affairs of the LLC shall be furnished to each Member, together with such appropriate information as may be required by each Member for the purpose of preparing his income tax return for that year. The Executive Secretary shall be responsible for these records.

15. **DISTRIBUTIONS.** Distributions shall be made equally to the Members at such times and in such amounts as a majority of the Managers shall determine, except as otherwise provided herein.

16. **MANAGEMENT DECISIONS.** Except as otherwise provided in this Agreement, all decisions relating to the LLC business shall be made by a majority vote of the Managers who own a two-thirds (2/3) majority.

    A. Extraordinary decisions not in the ordinary course of business, such as purchasing more real estate, levying Special Assessments, building additional

5

Case 15-02016-beh    Doc 1-1    Filed 01/09/15    Page 5 of 15

improvements to the property and such shall require a unanimous vote of the Managers.

B. The Managers may from time to time open bank accounts in the name of the LLC, and 2 of 3 Managers shall be the signatories thereon. The signatory requirement does not alter any unanimous Manager voting requirements under this Agreement.

C. No Manager shall receive any compensation for services rendered to the LLC.

17. **USAGE OF PROPERTY.** The Managers, in their sole discretion and by majority vote, shall determine the time and usage of the property by the Members and may develop separate guidelines. Any misuse of the property or violation of any guidelines shall render a Member in default and subject to Paragraph 21(A).

18. **DEATH OF A MEMBER.** If a Member dies and he is the sole member of his Membership Group, it is agreed that the Estate of the deceased Member shall pass his membership interest to one or more of the beneficiaries designated on Exhibit "D," which is attached hereto, incorporated herein and expressly made a part hereof. Exhibit "D" may be modified from time to time upon the wishes of any individual Member. Because there may be multiple owners within a single Membership Group, it is required that ownership be passed "in equal shares" to each beneficiary.

For generations beyond the initial Members, it is a requirement that each new owner within a Membership Group execute a duplicate copy of this Members' Operating Agreement. Additionally, Exhibit "D" shall be modified accordingly. Any new owner failing to comply with these requirements within nine (9) months of the date of death of the member waives any and all interest he or she may have in this LLC.

At all times, the beneficiaries listed on Exhibit "D" shall be the decedents or their spouses of the current Members unless the individual Membership Group unanimously agrees otherwise.

19. **LIFETIME GIFTS.** A Member may gift or otherwise transfer his interest to one or more of the beneficiaries designated on Exhibit "D" at any time. Each

6
Case 15-02016-beh    Doc 1-1    Filed 01/09/15    Page 6 of 15

transferee shall execute a duplicate copy of this Members' Operating Agreement. Additionally, Exhibit "D" shall be modified accordingly. Any new owner failing to comply with these requirements within nine (9) months of the date of death of the member waives any and all interest he or she may have in this LLC.

## 20. WITHDRAWAL OF MEMBER/MEMBERSHIP GROUP.

A. If a Member wishes to withdraw from a Membership Group, that withdrawal shall be handled internally within that particular Membership Group. Upon finalization of the withdrawal, the Membership Group shall notify the Executive Secretary, who shall then update Exhibits "C" and "D."

B. If a Membership Group wishes to withdraw from the LLC, it shall give the remaining Membership Groups written notice. The remaining Membership Groups shall purchase said departing Membership Group interest within 120 days of receipt of said notice. The purchase price shall be one-third (1/3) a formal appraisal, obtained and paid for by the departing Membership Group. If the remaining Membership Groups object to said appraisal, they have the option of requiring a second appraisal, at the departing Membership Group's cost. If an agreement cannot be reached, the Membership Groups shall obtain a third appraisal, at the cost of the departing Membership Group and the purchase price shall be the average of the three. If the departing Membership Group fails to obtain and/or pay for the appraisal, that Membership Group shall be considered in default.

## 21. DEFAULT OF A MEMBER/MEMBERSHIP GROUP

A. If a Member defaults under this Members' Operating Agreement or the guidelines set forth by the Managers and a written notice has been sent to the Membership Group of said Member, executed by a majority of the Managers, said Membership Group shall buyout said defaulting Member within 120 days of receipt of said notice. The purchase price shall be one-third (1/3) a formal appraisal, obtained and paid for by the defaulting Membership Group. If the remaining Membership Groups object to said appraisal, they have the option of requiring a second appraisal, at the

defaulting Membership Group's cost. If an agreement cannot be reached, the Membership Groups shall obtain a third appraisal, at the cost of the defaulting Membership Group and the purchase price shall be the average of the three.

      B. Any additional capital contributions, special assessments, expenses and the like called for under this agreement are the joint and several liability of each Member of a Membership Group. Any financial default within a Membership Group shall be handled internally. If a Membership Group defaults under this Members' Operating Agreement, the guidelines set forth by the Managers or any other financial default, the remaining Members may provide written notice after four (4) months from the due date and then shall purchase said Membership Group within 120 days of receipt of said notice. The purchase price shall be one-third (1/3) a formal appraisal, obtained and paid for by the departing Membership Group. If the remaining Membership Groups object to said appraisal, they have the option of requiring a second appraisal, at the departing Membership Group's cost. If an agreement cannot be reached, the Membership Groups shall obtain a third appraisal, at the cost of the departing Membership Group and the purchase price shall be the average of the three.

      C. If the departing Membership Group fails to obtain and/or pay for the required appraisals hereunder, the remaining Membership Groups may obtain the appraisals and subtract the cost from the ultimate purchase price.

      22. **RESTRICTIONS ON MANAGERS.** No Manager, without written consent of all other Members, shall:

          A. Sell, assign, create a security interest in, or pledge his interest in the LLC, except as otherwise provided for herein.

          B. Borrow or lend money on behalf of the LLC, or purchase any security or bond except for cash in full;

          C. Assign, transfer, pledge, compromise, or release any claim of the LLC except for full payment, or arbitrate, or consent to the arbitration of any of its disputes or controversies.

D. Use the name, credit or property of the LLC for any purpose other than a proper LLC purpose; or

E. Do no act detrimental to the LLC business or which would make it impossible to carry on that business.

23. **ADDITIONAL MEMBERS.** With the unanimous consent of all Members, additional persons may be admitted as Members effective as of the date of a regular meeting of the LLC, and upon revision and execution of the Members' Ownership Agreement.

24. **TERMINATION OF LLC.** The LLC may be terminated and dissolved at any time upon the written agreement of all Managers. All company bills and debts shall be paid and all remaining assets shall be distributed equally to the Membership Groups.

25. **PARTITION.** Each Member expressly waives any right to require partition of the Property.

26. **NOTICES.** Any notices hereunder shall be in writing and shall be deemed to have been given when delivered personally or when mailed by certified mail, return receipt requested, addressed to the person to be notified at his address set forth on the signature page of this Agreement, or in the case of the LLC, in Paragraph 2, or to such other address as any person may designate for himself by notice to the others given in accordance with the provisions hereof.

27. **BINDING EFFECT.** This Agreement shall be binding upon and shall insure to the benefit of the parties hereto and their respective successors and assigns.

28. **MISCELLANEOUS.** The section headings herein are for convenience only and shall not affect the interpretation of any of the provisions hereof. If any provision of this Agreement shall be held invalid for any reason, the remainder of this Agreement shall not be affected thereby.

29. **JURISDICTION.** This Agreement shall be construed in accordance with the laws of the State of Wisconsin.

30. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement by and between the Members hereto.

31. **COUNTERPARTS.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

32 **AMENDMENTS.** This Members' Operating Agreement may not be amended except in writing by unanimous vote of the Members.

33. **NUMBER AND GENDER.** The use herein of a singular term shall include the plural and use of the masculine, feminine and neuter genders shall include all others.

34. **VOTING.** Whenever a unanimous vote is called for under this Agreement, whether by the Managers or the Members, the unanimous vote shall be put in writing, and require the signatures of all of the eligible voters before being enacted.

**IN WITNESS WHEREOF,** the parties have signed this Agreement on the day and year first above stated.

_____  Address: W7705 Creek Road
Daniel J. Stebnitz                         Delavan, WI   53115

_____  Address: N5204 Brookwood Lane
David S. Stebnitz                          Elkhorn, WI 53121

_____  Address: N4694 Ridge Prairie School Road
Gary C. Stebnitz                           Delavan, WI   53115

STATE OF WISCONSIN    )
                      ) ss.
COUNTY OF WALWORTH )

Personally came before me this __2__ day of __April__, 2005,

10
Case 15-02016-beh    Doc 1-1    Filed 01/09/15    Page 10 of 15

the above named DANIEL J. STEBNITZ, DAVID S. STEBNITZ and GARY C. STEBNITZ, to me known to be the persons who executed the foregoing instrument and acknowledge the same.

_____
Notary Public, Walworth County, WI
My commission _Permanent_

## CONSENT OF SPOUSE

KATHI J. STEBNITZ, spouse of Daniel J. Stebnitz, BARBARA L. STEBNITZ, spouse of David S. Stebnitz and GLORIA STEBNITZ, spouse of Gary C. Stebnitz, join in the execution of this Agreement for the purpose of consenting to the terms hereof and waiving any and all marital property interests in said SPIRIT VALLEY CAMP, LLC, pursuant to the marital property laws of the State of Wisconsin.

_____
Kathi J. Stebnitz, wife of Daniel J. Stebnitz

_____
Barbara L. Stebnitz, wife of David S. Stebnitz

_____
Gloria Stebnitz, wife of Gary C. Stebnitz

THIS INSTRUMENT DRAFTED BY:

Attorney Edward F. Thompson
Attorney Laura Weber Sterling
CLAIR LAW OFFICES, S. C.
P.O. Box 445
Delavan, WI   53115-0445

EXHIBIT A

## ARTICLES OF ORGANIZATION
## LIMITED LIABILITY COMPANY
(Organized under Chapter 183 of the Wisconsin Statutes)

2005 APR 13 AM 9: 25

*Executed by the undersigned for the purpose of forming a Wisconsin Limited Liability Company under Chapter 183 of the Wisconsin Statutes:*

Article 1. Name of Limited Liability Company:

SPIRIT VALLEY CAMP, LLC

Article 2. The street address of the initial registered office is:

1102 Ann Street
Delavan, WI 53115

Article 3. The name of the initial registered agent at the above registered office is:

Daniel J. Stebnitz

Article 4. Management of the limited liability company shall be vested in:

(X) a manager or managers

OR

( ) its members

Article 5. Executed on _April 12_, 2005.

Name and complete address of each organizer:

Daniel J. Stebnitz
W7705 Creek Road
Delavan, WI 53115

Gary C. Stebnitz
N4694 Ridge Prairie School Road
Delavan, WI 53115

David S. Stebnitz
N5204 Brookwood Lane
Elkhorn, WI 53121

This document was drafted by:

Attorney Edward F. Thompson
CLAIR LAW OFFICES, S.C.
P.O. Box 445
Delavan, WI 53115-0445
(262) 728-9196

# EXHIBIT "B"

## LEGAL DESCRIPTION

ᵛThe Southeast Quarter of the Southeast Quarter (SE ¼ SE ¼), Section Thirty (30), Township Thirty-four (34), Range Four (4) East.

Parcel ID No. 030-3404-304-9996


SW ¼, SE ¼, T-30-15, Section 30-34-04, Town of Tomahawk, County of Lincoln, Wisconsin.

Parcel ID No. 030-3404-304-9997


The Northwest Quarter of the Southeast Quarter (NW ¼ - SE ¼), Section Thirty (30), Township Thirty-Four (34), Range Four (4) East.

Parcel ID No. 030-3404-304-9998

## EXHIBIT "C"

## MEMBERSHIP GROUPS

### Membership Group A

Daniel J. Stebnitz

### Membership Group B

David S. Stebnitz

### Membership Group C

Gary C. Stebenitz

## EXHIBIT "D"

To Spirit Valley Camp, LLC
Members Operating Agreement effective the 12th day of April, 2005

### BENEFICIARIES

### Membership Group A - Beneficiaries

Nichole M. Salazar
Joshua D. Stebnitz
Molly J. Stebnitz

### Membership Group B - Beneficiaries

Christopher Stebnitz
Ryan Stebnitz
Rebecca Stebnitz

### Membership Group C - Beneficiaries

Gloria Stebnitz

This exhibit has been modified effective the 17th day of November, 2008. The modification of this exhibit is pursuant to Paragraph 18 of this Members Operating Agreement dated the 12th day of April, 2005.

_signature_
Daniel J. Stebnitz
W7705 Creek Road
Delavan, WI 53115

_signature_
David S. Stebnitz
N5204 Brookwood Lane
Elkhorn, WI 53121

_signature_
Gary C. Stebnitz
1006 South Second Street
Delavan, WI 53115

THIS EXHIBIT DRAFTED BY:

Attorney Edward F. Thompson
State Bar No. 1013187
CLAIR LAW OFFICES, S.C.
617 E. Walworth Ave.
P.O. Box 445
Delavan, WI 53115-0445
Phone:      (262) 728-9196
FAX:        (262) 728-1012
email: edthompson@clairlawoffices.com